UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAWN M. THOMPSON,

                              Plaintiff,

                                                                                   DECISION AND ORDER
             v.                                                             06-CV-237A

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.

---

## **INTRODUCTION**

      Plaintiff Dawn M. Thompson has made a motion for attorney fees in this action under the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412.  Defendant, the Commissioner of Social Security ("Commissioner"), opposes the motion only to the extent that Ms. Thompson seeks to have the Commissioner pay EAJA attorney fees to her attorney, the Law Offices of Kenneth R. Hiller (Kenneth R. Hiller, Esq., of counsel), and not to her personally.  Oral argument was held on March 18, 2008.  The parties having resolved all other issues in this action by stipulation, only one issue remains for this Court to resolve: Can a plaintiff entitled to attorney fees under the EAJA designate her counsel as payee of those fees, or must she receive those fees personally?  For the reasons below, Ms. Thompson's motion is granted.

**BACKGROUND**

This action arose in connection with Ms. Thompson's application to the Commissioner for Social Security disability benefits. After the Commissioner denied Ms. Thompson's claim, she filed her complaint in this action on April 7, 2006. The parties subsequently stipulated to remand Ms. Thompson's claim to the Commissioner for further proceedings, and this Court issued an Order on May 16, 2006 approving the stipulation and remanding Ms. Thompson's claim.

Upon remand, the Commissioner made a finding on October 26, 2006 that Ms. Thompson was entitled to Social Security disability benefits. The parties filed a stipulation on July 3, 2007 acknowledging that this action could be dismissed as moot. The Court issued an Order on July 5, 2007 approving the stipulation. The Clerk of the Court formally dismissed this action in a judgment dated July 16, 2007.

On August 16, 2007, Ms. Thompson made the pending motion for attorney fees in connection with the resolution of her Social Security disability claim. In general, Ms. Thompson set forth reasons for believing that she met the criteria for reimbursement of attorney fees under the EAJA, including her contention that the initial denial of her claim was not supported by substantial evidence and thus not "substantially justified" under 28 U.S.C. § 2412(d)(1)(B). In response, the Commissioner does not contest that Ms. Thompson should receive attorney fees under the EAJA, and asserts further that the parties have agreed to an amount of $2,989.06 plus $250.00 in costs. The Commissioner also does not oppose delivering payment to Ms. Thompson, care of her counsel. The Commissioner, in fact, has gone as far as to state that he would not oppose paying Ms. Thompson's attorney directly (i.e., making Mr. Hiller the payee)

"pursuant to a valid assignment of fees executed by plaintiff." The Commissioner objects to the pending motion only to the extent that Mr. Hiller would be payee of the stipulated legal fees without an explicit assignment. The Commissioner argues that the plain language of the EAJA requires that compensation for legal fees go only to Ms. Thompson personally, because only she is the "prevailing party" within the meaning of the EAJA.

## DISCUSSION

There is a split among the courts of this District as to whether a plaintiff awarded attorney fees under the EAJA must receive those fees personally. Compare Blackwell v. Astrue, No. 06-CV-860, 2008 WL 4145523 (W.D.N.Y. 2008) (Skretny, J.) (directing payment to plaintiff's attorney) and Garner v. Astrue, No. 06-CV-769, 2008 WL 2357409 (W.D.N.Y. 2008) (Curtin, J.) (same) with Hogan v. Astrue, 539 F. Supp. 2d 680 (W.D.N.Y. 2008) (Larimer, J.) (directing payment to plaintiff personally). The split within this District mirrors the split that has developed among circuit and district courts across the country. See, e.g., Hogan, 539 F. Supp. 2d at 683 (citing a number of circuit and district court decisions that have reached opposite conclusions). This Court will begin by assessing the EAJA's operation and purpose, and then will evaluate whether the EAJA directs a plaintiff receiving an award of attorney fees to receive it by any particular method.

### The EAJA's Operation and Purpose

The plain language of the EAJA operates to reimburse Ms. Thompson for the actual costs that she incurred and must repay for her successful legal action against the

3

Commissioner.  "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.  Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.  The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  Robinson v. Shell Oil Co., 519 U.S. 337, 340-41 (1997) (internal quotation marks and citations omitted).  Here, the EAJA states that

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Subsection (d)(2)(A) defines "fees and other expenses" to include "reasonable attorney fees."  There is some uncertainty as to whether an attorney fee awarded under the EAJA in a Social Security case would constitute gross or taxable income.  See Comm'r v. Banks, 543 U.S. 426, 439 (2005) (declining to address whether attorney fees awarded under federal fee-shifting statutes constitute gross or taxable income).  Regardless, any attorney fees that Ms. Thompson receives under the EAJA will not be a benefit to her as, for example, her underlying Social Security disability award is.  EAJA attorney fees are not available to all prevailing parties; pro se litigants do not qualify, even if they are attorneys.  SEC v. Price Waterhouse, 41 F.3d 805, 808 (2d Cir.

1994).  EAJA attorney fees are a narrowly tailored form of compensation granted for a specific financial obligation that a prevailing party has "incurred."

The EAJA operates to provide a narrowly tailored form of compensation because the purpose of the statute is to allow citizens to challenge government decisions regardless of their wealth or income level.  The EAJA awards attorney fees that prevailing parties incur "(1) to remove financial deterrents for those challenging government actions; and (2) to encourage challenges to improper government actions and help formulate public policy."  Vacchio v. Ashcroft,  404 F.3d 663, 668 (2d Cir. 2005) (citations omitted).  Congress has expressed that the EAJA can help formulate public policy because

> An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law.  An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate, or it may provide a vehicle for developing or announcing more precise rules.  The bill thus recognizes that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate or adjudicate has helped to define the limits of Federal authority.

Boudin v. Thomas, 732 F.2d 1107, 1114 (2d Cir. 1984) (citation omitted), superseded in part on other grounds by Pub. L. No. 99-80 § 2(c)(2), 99 Stat. 183, codified at 28 U.S.C. § 2412(d)(2)(D).

The history of this action confirms the policy purpose behind the EAJA.  The Commissioner appears to have stipulated to a remand of Ms. Thompson's claim for no reason other than the inaudible nature of the tape recording of the initial hearing.  Upon remand, the Commissioner approved Ms. Thompson's claims without any apparent comment on the basis for the initial denial.  Further, the Commissioner has not contested Ms. Thompson's eligibility for an award of attorney fees, implicitly conceding

that its prior decision was not "substantially justified" within the meaning of the EAJA. This change in outcome without explanation seems to highlight the very type of "improper government action" that Congress encourages plaintiffs to challenge through the EAJA.

## Method of Compensation Under the EAJA

There is no ambiguity in the policy purpose of the EAJA, or in the plain language of the EAJA that sets forth a specific form of compensation for a specific kind of cost incurred. The EAJA, however, contains no provision explaining the method of compensation. Now that the Commissioner has agreed to pay Ms. Thompson attorney fees and has agreed to the amount that it should pay, how should it deliver that compensation to her? There are two options. The Commissioner could eliminate Ms. Thompson's financial obligation directly, by paying her attorney. Alternatively, the Commissioner could eliminate Ms. Thompson's financial obligation indirectly, by paying her and hoping that funds designated solely for that purpose ultimately are used for that purpose. In the absence of explicit language in the EAJA regarding the method of payment of attorney's fees, the Court turns to well-accepted rules of statutory construction for guidance.

The first rule of statutory construction that provides guidance in this action requires that the Commissioner compensate Ms. Thompson for attorney fees incurred in a way that advances EAJA's purpose. "All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose." Haggar Co. v. Helvering, 308 U.S. 389, 394 (1940)

6

(citations omitted).  The EAJA encourages meritorious litigation against the government, and by denying attorney fees to pro se litigants, it encourages plaintiffs to pursue their claims through counsel.  See Hauschild v. U.S., 53 Fed. Cl. 134, 146 (Fed. Cl. 2002).  Attorneys are more likely to accept cases against government agencies if they can be assured of payment upon the completion of successful litigation that fulfills all of the EAJA's criteria.  The financial obligation that Ms. Thompson incurred that the Commissioner has agreed to remove resulted solely from her decision, encouraged by the EAJA, to retain Mr. Hiller to prosecute her claim.  The financial obligation did not result from any other conduct.  Under these circumstances, the best way to reward Ms. Thompson for doing exactly what Congress hoped that she would do here is to direct payment to her attorney and address her financial obligation directly.  Since the Commissioner has to redress Ms. Thompson's financial obligation in the same amount no matter what method of compensation is used, directing payment to Mr. Hiller has the additional benefit of promoting the policy goals of the EAJA while not imposing any additional costs or burdens on the government.  In fact, the Commissioner did not object to paying attorneys directly in prior cases in this District and others.  See Ballard v. Astrue, 485 F. Supp. 2d 290 (W.D.N.Y. 2007); Scott v. Astrue, 474 F. Supp. 2d 465 (W.D.N.Y. 2007); Antonetti v. Barnhart, 438 F. Supp. 2d 145 (W.D.N.Y. 2006); Colegrove v. Barnhart, 435 F. Supp. 2d 218 (W.D.N.Y. 2006); see also Stephens v. Astrue, 539 F. Supp. 2d 802, 810 (D. Md. 2008) ("[I]t is indisputable that the Social Security Administration was administering the law consistent with, or acquiescing to, plaintiff's view of counsel's property rights in the fee award.  Long-continued practical

interpretation of a statute by an administrative agency is influential in interpreting a statute.") (citations omitted).

  The second rule of statutory construction that provides guidance as to the method of compensation for EAJA attorney fees requires affirming a statute in its entirety when possible.  The Supreme Court "consistently [has] expressed a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." Freytag v. Comm'r, 501 U.S. 868, 877 (1991) (internal quotation marks and citations omitted).  In 1985, Congress passed an amendment to Section 206(b) of the Social Security Act that codified its implicit understanding that compensation to plaintiffs for EAJA legal costs would be directed to plaintiffs' attorneys. That amendment specified that "where the <u>claimant's attorney receives fees</u> for the same work under both section 206(b) of [the Social Security Act] and [the EAJA], the claimant's attorney <u>refunds</u> to the claimant the amount of the smaller fee."  Pub. L. No. 99-80 § 3(2), 99 Stat. 183 (emphasis added).  This amendment's direction to refund EAJA attorney fees would make no sense if the attorneys involved had not received EAJA payments from the government and had nothing to refund.  Interpreting the EAJA in harmony with its subsequent amendment will avoid rendering any statutory provision affecting EAJA superfluous, while still promoting the EAJA's policy goals and still imposing no additional costs or burdens on the government.  Cf. Phillips v. Gen. Servs. Admin., 924 F.2d 1577, 1583 (Fed. Cir. 1991) (directing payment to counsel to preserve the implication "that the fee award will be paid over to the legal representative"); Ceglia v. Schweiker, 566 F. Supp. 118, 120 n.1 (E.D.N.Y. 1983) (supporting payment of attorney fees to counsel, where "the plaintiff is represented by a legal services

organization, [and] any fee obtained will go directly to the legal services organization which is in reality the real party in interest").

In the absence of explicit language in the EAJA directing the method by which the Commissioner should pay attorney fees to Ms. Thompson, payment to her attorney is the method that best complies with the rules of statutory construction that provide guidance in this action.

### Legal Agency and the "Prevailing Party" Under the EAJA

In opposing payment of attorney fees directly to Mr. Hiller, the Commissioner has attempted to use the language of the EAJA to distinguish Ms. Thompson's standing to receive payment from Mr. Hiller's.  Specifically, the Commissioner writes at length in his motion papers, and cites to numerous cases in support of his writing, in an effort to distinguish Ms. Thompson from her attorney as the "prevailing party" under the EAJA. The Commissioner argues that Ms. Thompson must be the payee because, reading the EAJA literally, only she is the "prevailing party" here.  Except for the offset issue discussed below, this argument at most creates a distinction without a difference.  Ms. Thompson's attorney does not contest that Ms. Thompson is the prevailing party. Further, Ms. Thompson's attorney does not seek standing to assert his own rights in this action, and the analysis in this decision does not require holding otherwise.  At all times in this action, Ms. Thompson's attorney, as her attorney, served as her agent. Ms. Thompson's attorney had full authority, as her agent, to act on her behalf and to make the pending motion to collect EAJA attorney fees.  Under the law, Mr. Hiller's acceptance of those fees, as Ms. Thompson's agent, constitutes payment to the prevailing party in this action.  Cf. Brownstein v. Aluminum Reserve Corp., 245 F.2d 82,

84 (2d Cir. 1957) ("No valid reason has been advanced for making an exception to the general rule that payment to an attorney of a claim which he is employed to recover or collect operates as payment to the client himself, absent specific contrary arrangements.") (citations omitted); <u>Chestnut Shipping Co. v. T-3 Freight, Ltd.</u>, No. 94 Civ. 1952, 1995 WL 75485, at *2 (S.D.N.Y. 1995) (citing <u>Brownstein</u>).  The Commissioner has conceded that Ms. Thompson incurred legitimate fees and that he must pay them on Ms. Thompson's behalf.  The Commissioner has gone as far as to stipulate that he is willing to designate Mr. Hiller as payee of the compensation for attorney fees, subject to an assignment of fees executed by Ms. Thompson.  If the Commissioner is willing to concede that he owes Ms. Thompson an award of attorney fees, that he agrees to the amount owed, and that he is not categorically opposed to designating Mr. Hiller as payee, then there is no reason to insist on an assignment that attorney agency principles do not require.  There is a single prevailing party here, and a single financial obligation that the Commissioner now must remove.  There are two methods of removing Ms. Thompson's stipulated financial obligation to her attorney—designating her as payee, or her legal agent.  For the reasons discussed above, the latter method—designating Ms. Thompson's attorney—better serves the EAJA's policy goals in the absence of explicit language in the EAJA favoring one method over the other.

**Government Offsets**

The potential for government offsets to undermine the EAJA's purpose underscores the need to interpret the EAJA in a way that upholds its policy goals.  Ms. Thompson has expressed concern that there is an ulterior motive behind the

Commissioner's desire to end the past practice of designating attorneys as payees—the government's administrative offset program.  See generally 31 U.S.C. § 3716; 31 C.F.R. §§ 285.1-13.  The offset program, according to Ms. Thompson, would allow the Commissioner to keep Ms. Thompson's EAJA attorney fees regardless of his stipulation that he owes them to her, if Ms. Thompson is deemed to owe the government any debts as defined in the regulations governing the program.  Ms. Thompson goes on to state that the Commissioner insists that Ms. Thompson be the payee of any EAJA attorney fees because the offset program will not work unless the name on a payment to be seized matches the name on a debt.  See 31 C.F.R. § 285.5(b) ("Match means the taxpayer identifying number and name (or derivative thereof) of the payee on a payment record are the same as the taxpayer identifying number and name of the debtor on a delinquent debt record.").

The Commissioner's response to Ms. Thompson's assertions about his real motives is not persuasive.  The Commissioner asserts that he presently is not aware of any debts that Ms. Thompson owes that would trigger an offset.  If so, however, then why is the Commissioner so interested in setting up her EAJA attorney fees to qualify for an offset?  By law, the government must know from all of its agencies whether Ms. Thompson is subject to an offset.  See 31 U.S.C. § 3720A(a) ("Any Federal agency that is owed by a person a past-due, legally enforceable debt . . . shall . . . notify the Secretary of the Treasury at least once each year of the amount of such debt.").  The Commissioner asserts further that any concern about offsets is speculative.  This Court disagrees that offsets are speculative, when statutes are in place precisely for this purpose, and when attempts at offsets of EAJA attorney fees have repeatedly occurred.

See Manning v. Astrue, 510 F.3d 1246, 1256 (10th Cir. 2007) (holding that EAJA attorney fees are subject to offset for student loan debts); Dixon-Townsell v. Barnhart, 445 F. Supp. 2d 1283, 1285 (N.D. Okla. 2006) (plaintiff's counsel received notice that 100% of EAJA attorney fees were offset because of child support debt), abrogated on other grounds by Manning; Reeves v. Barnhart, 473 F. Supp. 2d 1173, 1175 (M.D. Ala. 2007) (Treasury Department offset 100% of plaintiff's EAJA attorney fees for child support debt), aff'd sub nom. Reeves v. Astrue, 526 F.3d 732 (11th Cir. 2008); see also Quade ex rel. Quade v. Barnhart, 570 F. Supp. 2d 1164, 1172 (D. Ariz. 2008) (citing additional instances of administrative offsets and noting that "[t]aking awards of attorney's fees to offset the debts of attorneys' clients seems an absurd interpretation of a statute meant to encourage attorney representation in cases where the government's resources significantly outweigh the individual's resources"). If the offsets are real then so is the potential chilling effect on claimants' ability to retain counsel for Social Security disability claims. The district court in Quade explained this chilling effect by noting that

> As evidenced from the numerous cases in which awards of attorney's fees have already been used to pay the debts of clients, attorneys are losing their earned fees. This is predictable in the social security benefits context. Plaintiffs are disabled people, unable to pursue gainful employment and frequently in distressed financial circumstances. This is exacerbated by the years it takes to pursue a claim through both the administrative process as well as the court process. Moreover, as here, the fee award is usually quite modest as compared to an award under 42 U.S.C. § 1988, which is usually in the tens or hundreds of thousands of dollars. The potential for an entire fee award to be offset in the Social Security context is great given both the modest means of many claimants and the relatively small fee awards in the typical cases.
>
> This is an absurd result that thwarts the purpose of the EAJA.

Quade, 570 F. Supp. 2d at 1173.

The circumstances of actual offsets occurring regularly strengthens the argument for removing Ms. Thompson's stipulated financial obligation by directing funds to Mr. Hiller.  Either EAJA attorney fee awards are meant to compensate for attorney fees, or they are not.  If so, and if between the two possible methods of payment there is one option that fulfills all EAJA policy goals at no additional cost, then that option is the better one.  Here, that option means designating Mr. Hiller as payee, a position that the Commissioner has taken previously without concern and that the Commissioner essentially has conceded here, in light of general principles of attorney agency.

## **CONCLUSION**

For all of the above reasons, Ms. Thompson's motion is granted.  As the parties have stipulated, Ms. Thompson is awarded an amount of $2,989.06 plus costs of $250.00, pursuant to the EAJA.  The Commissioner will deliver this payment, payable to the Law Offices of Kenneth Hiller, to Mr. Hiller within 30 days of the date of electronic filing of this Order.

SO ORDERED.

s/ *Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED:  March 3, 2009